IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| TUTERA INVESTMENTS, L.L.C, ) | |
| GERIATRICS, L.L.C., MIDWEST CARE ) | |
| CENTERS, INC., AND MIDAMERICA ) | |
| CARE FOUNDATION, ) | |
| ) | |
| Plaintiffs. ) | |
| ) | |
| v. ) | Case No. 04-1155-CV-W-GAF |
| ) | |
| MILTON S. PULLEN, JR., PULLEN & ) | |
| ASSOCIATES, INC., PULLEN AND ) | |
| ASSOCIATES, L.L.C., AND J. WHITNEY ) | |
| WALLINGFORD, ESQ., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Presently before the Court is a Motion to Dismiss for Lack of Personal Jurisdiction filed by the Defendant, J. Whitney Wallingford, Esq. ("Wallingford"). (Doc. #4). Wallingford asserts that the Court lacks personal jurisdiction over him as the facts do not support the exercise of the Missouri long-arm statute and Wallingford lacks sufficient contacts with Missouri to permit this Court to exercise its judicial power over him. Id. The Plaintiffs[1] oppose this Motion. (Doc. #12). Upon careful consideration of the facts and arguments presented by the parties, Wallingford's Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED.

## DISCUSSION

---

[1] Tutera Investments, LLC and Geriatrics, LLC are collectively referred to as "Plaintiffs."

1

**I.   Facts**

The Plaintiffs, who own and operate nursing homes throughout the United States, are responsible for providing the employees of these nursing homes with health care coverage. (Pl.'s 1st Am. Pet.). In early 2002, the Pullen Defendants[2] approached the Plaintiffs with a self-insured program for employee healthcare benefits allegedly being developed through Direct General Insurance Company (the "Direct General Plan"). Id. The Pullen Defendants indicated that the Direct General Plan would be "fully funded" and that the Plaintiffs' only responsibility would be for the monthly premium payments. Id. In August 2002, the Pullen Defendants retained Wallingford to write a letter to the Plaintiffs reaffirming the Pullen Defendants' statements about the Direct General Plan. Id. Based upon the representations of the Pullen Defendants and Wallingford, the Plaintiffs selected the Direct General Plan to provide insurance coverage for their nursing home employees. Id.

Wallingford is a licensed attorney practicing and residing in the State of Kentucky. (Doc. #7). At his place of business in Kentucky, Wallingford drafted the letter to the Plaintiffs at the request of his clients, the Pullen Defendants. Id. In the first paragraph of the three-page, single spaced letter, Wallingford wrote:

> Milton Pullen has requested that I contact you to provide advice and legal assistance in connection with certain employee benefit plan coverage for employees of The Tutera Group. I am contacting you in my capacity as legal counsel for Milton and his insurance agency, Pullen & Associates, Inc. All services are rendered on behalf of either Milton or Pullen & Associates, Inc., and you are not charged for any assistance provided by me or my firm. We routinely assist Milton in providing assistance to clients as they transition into products offered by Milton and by Pullen & Associates, Inc.

(Doc. #12, Ex. A). Attached to the letter was a copy of Wallingford's personal resume which outlined his

---

[2] Mitlon S. Pullen, Jr., Pullen & Associates, Inc., and Pullen and Associates, L.L.C. are collectively referred to as the "Pullen Defendants."

experience in the employee benefits field.  Id.

In 2003, the Plaintiffs' nursing home employees began complaining to the Plaintiffs about unfunded claims under the Direct General Plan.  Id.  Upon further investigation, the Plaintiffs discovered that, contrary to the Defendants' representations, there was no "fully funded" employee benefits coverage provided to their nursing home employees by Direct General.  Id.  Consequently, the Plaintiffs filed this action in Missouri state court asserting a claim for negligence against the Pullen Defendants and a claim for negligent misrepresentation against the Pullen Defendants and Wallingford.  Id.  On December 22, 2004, the Defendants removed this matter to federal court on the basis of federal question and diversity jurisdiction. (Doc. #1). Wallingford presently seeks to have the negligent misrepresentation claim asserted against him dismissed for lack of personal jurisdiction.  (Doc. #4).

**II.    Standard**

Wallingford asserts that the Plaintiffs' claim of negligent misrepresentation filed against him should be dismissed for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  The Plaintiffs, as the party seeking to invoke jurisdiction, bear the burden of presenting facts which establish that jurisdiction exists.  Mountaire Feeds, Inc. v. Argo Impex, S.A., 677 F.2d 651, 653 (8th Cir. 1982). Although "the facts adduced in a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction must be viewed in the light most favorable to the party opposing the motion, there must nonetheless be some evidence upon which a prima facie showing of jurisdiction may be found to exist."  Mountaire Feeds, 677 F.2d at 653.

When considering a motion to dismiss for lack of personal jurisdiction, a federal court presiding over a claim brought pursuant to the court's diversity jurisdiction must engage in a two-step inquiry.  Scullin

Steel Co. v. Nat'l Ry. Utilization Corp., 676 F.2d 309, 312 (8th Cir. 1982). First, the district court must determine "whether the defendant committed one of the acts enumerated in [Missouri's] long-arm statute." Scullin Steel, 676 F.2d at 312. Then, the court must consider "whether the exercise of personal jurisdiction over the defendant violates the Due Process Clause of the Fourteenth Amendment." Id. The Court will consider Missouri law when determining whether Wallingford committed one of the acts enumerated in Missouri's long-arm statute, Mo. Rev. Stat. § 506.500. Id. at 311. However, the Court will apply federal law when considering whether the reach of Missouri's long-arm statute is limited by Due Process. Id.

### A. Missouri Long-Arm Statute: § 506.500

The Plaintiffs have asserted a claim against Wallingford for negligent misrepresentation arising out of the statements he made in the letter he wrote to the Plaintiffs on behalf of his clients, the Pullen Defendants. The Plaintiffs contend that Wallingford's actions fall within the purview of the "tortious act" provision of the Missouri long-arm statute. Missouri's long-arm statute, Mo. Rev. Stat. § 506.500 provides in relevant part:

> Any person . . . whether or not a citizen or resident of this state . . . who . . . does any of the acts enumerated in this section, thereby submits such person . . . to jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts: . . . (3) The commission of a tortious act within this state; . . .

To satisfy their burden of proof on the first element of the two-prong inquiry into the propriety of personal jurisdiction, the Plaintiffs must make a "prima facie showing that [Wallingford] committed a tortious act outside the State of Missouri which was intended to cause and did cause consequences within the State of Missouri." *See* Nelson v. R. Greenspan & Co., Inc., 613 F.Supp. 342, 345 (E.D. Mo. 1985).

4

According to one Missouri district court, "a non-resident defendant 'commits a tortious act within the state' when, through wholly extraterritorial acts it sets in motion a course of action deliberately designed to move into the forum state in order to injure the plaintiff." Pfeiffer v. Int'l Academy of Biomagnetic Medicine, 521 F.Supp. 1331 (W.D. Mo. 1981) *decl'd to follow on other grounds*, Brigdon v. Slater, 100 F.Supp.2d 1162 (W.D. Mo. 2000).

The negligent misrepresentation claim the Plaintiffs have asserted against Wallingford raises the threshold issue of whether Missouri law permits a non-client to maintain an action for negligent misrepresentation against an attorney. *See* Mark Twain Kansas City Bank v. Jackson, Brouillete, Pohl & Kirley, 912 S.W.2d 536, 538 (Mo. App. W.D. 1995). Traditionally, Missouri courts have held that "an attorney is not liable to a third party who is not his or her client because the attorney is not in privity of contract – or in an attorney-client relationship – with the third party." Roth v. La Societe Anonyme Turbomeca France, 120 S.W.3d 764, 776 (Mo. App. W.D. 2003). In the absence of privity, "an attorney could be liable to non-clients for professional acts only in exceptional cases involving intentional torts, such as fraud or collusion." Mark Twain Kansas City Bank v. Jackson, Brouillete, Pohl & Kirley, 912 S.W.2d 536, 538 (Mo. App. W.D. 1995). The "exceptional circumstances" rule, as it is commonly known, has been strictly limited to intentional torts. Roth, 120 S.W.3d at 776. Recently, the Missouri Supreme Court recognized another exception to the long-standing privity rule in Donahue v. Shugart, Thompson & Kilroy, P.C., 900 S.W.2d 624, 628 (Mo. Banc 1995), allowing non-clients to sue attorneys for negligence where "the attorney-defendant performed services specifically intended by the client to benefit plaintiffs."

In Donahue, the intended recipients of a gift causa mortis brought a legal malpractice action against the donor's attorney and his law firm. Donahue, 900 S.W.2d at 625. The trial court dismissed the claims

5

finding that the plaintiffs did not have standing because they were not clients of the defendant-attorneys and, therefore, the defendant-attorneys did not owe the plaintiffs a duty. Id. The Missouri Supreme Court articulated a six-factor "modified balancing test" for determining when an attorney owes a duty to a non-client. Donahue, 900 S.W.2d at 628. These six factors include:

> (1) The existence of a specific intent by the client that the purpose of the attorney's services were to benefit the plaintiffs.
> (2) The foreseeability of the harm to the plaintiffs as a result of the attorney's negligence.
> (3) The degree of certainty that the plaintiffs will suffer injury from attorney misconduct.
> (4) The closeness of the connection between the attorney's conduct and the injury.
> (5) The policy of preventing future harm.
> (6) The burden on the profession of recognizing liability under the circumstances.

Donahue, 900 S.W.2d at 628. In applying the Donahue test, Missouri courts have recognized that "the client's purpose and specific intent to benefit a non-client through the attorney-client relationship is crucial." Mark Twain, 912 S.W.2d at 539. In developing the six-factor test and emphasizing the importance of the first factor, the Missouri Supreme Court stated:

> The primary arguments against allowing a non-client to bring a legal malpractice action are the possibility that liability will extend to an unlimited class of individuals and will interfere with the attorney-client relationship. These concerns are addressed by proper application of the modified balancing of factors approach. If the transaction was specifically intended to benefit the plaintiffs, liability is not extended to an unlimited class and it does not interfere with the attorney-client relationship, particularly where the client is deceased or incompetent. A benefit that is merely incidental or indirect will not satisfy this fact. Neither will a benefit to one in an adversarial relationship to the client be sufficient to satisfy the factor. Within the bounds of the law, the attorney's duty is solely to advance the client's interest.

Donahue, 900 S.W.2d at 628.

The Plaintiffs do not claim that Wallingford committed an intentional tort, thereby invoking the exceptional circumstances exception to the privity requirement. Rather, the Plaintiffs argue that they are

6

entitled to pursue their claim of negligent misrepresentation against Wallingford upon application of the Donahue test. The Plaintiffs contend that the Pullen Defendants' purpose and specific intent to benefit them is evidenced by Wallingford's admission that he wrote the letter to the Plaintiffs at his client's request. In support of their position, the Plaintiffs highlight certain portions of the first paragraph of Wallingford's letter. According to the Plaintiffs, they "clearly" were the "known and intended beneficiaries of Wallingford's representations."

Contrarily, Wallingford contends that the Plaintiffs have failed to establish the Pullen Defendants' "specific intent" to benefit the Plaintiffs. Wallingford asserts that he was merely representing his client, the Pullen Defendants, and the "Plaintiffs were not the intended beneficiaries of Wallingford's services, but simply a prospective client of Wallingford's client." In support of his position, Wallingford highlights the same portion of the letter he drafted and mailed to the Plaintiffs as the Plaintiffs reference in support of their position.

The Court finds that the Plaintiffs have failed to make a prima facie showing of negligent misrepresentation against Wallingford as they have failed to present facts which support a finding that the Pullen Defendants specifically intended to benefit the Plaintiffs by retaining Wallingford. There is no evidence that the Pullen Defendants intended to confer a benefit on the Plaintiffs; furthermore, it is unclear what that benefit would be. Rather, Wallingford's actions appear solely intended to obtain a benefit for the Pullen Defendants; that benefit being the procurement of clients for the Pullen Defendants' employee benefits plan. In the first paragraph of the letter Wallingford sent to the Plaintiffs (which the Plaintiffs and Wallingford both claim support their respective positions) Wallingford states that he is contacting the Plaintiffs at the request of the Pullen Defendants, "in [his] capacity as legal counsel" for the Pullen

Defendants and that his legal "services are rendered on behalf" of the Pullen Defendants. These statements clearly indicate that Wallingford's legal advice is solely intended to advance the best interests of his clients.

The Pullen Defendants retained Wallingford with the intention of cultivating clients for its employee benefits plan. The potential business relationship between the Plaintiffs and the Pullen Defendants is inherently antagonistic as both parties seek their own economic gain, rather than the conferral of a benefit. It is well-settled that an attorney is not liable to third parties for negligence alleged to have occurred during adversarial proceedings. *See* Roth, 120 S.W.3d at 776. Although the Pullen Defendants and the Plaintiffs were not in a traditional adversarial posture, their interests in the potential business transaction were diverse. As the Pullen Defendants' interests are inherently diverse from the Plaintiffs' interests, it is illogical for Wallingford's acts to be construed as intended to confer a benefit on the Plaintiffs.

An attorney's representation of a client cannot be construed as an altruistic gesture towards third parties who are in any way impacted by the attorney's professional acts. Enlarging the attorney's duty to non-clients to this extent will result in liability being extended to an unlimited class, in clear violation of the holding in Donahue. Furthermore, such an expansion of liability would unduly interfere with the attorney's ethical obligation to vigorously represent his or her client's interests. As such, this Court finds that the Plaintiffs have failed to present facts to support a finding that the Pullen Defendants retained Wallingford with the specific intention of conferring a benefit on the Plaintiffs. Accordingly, the Plaintiffs have failed to prove that Wallingford committed a "tortious act" as enumerated in Missouri's long-arm statute.

### B. *The Due Process Clause of the Fourteenth Amendment*

As the Plaintiffs have failed to present sufficient facts to prove that Wallingford committed one of the acts enumerated in Missouri's long-arm statute, this Court need not inquire into whether the exercise

8

of personal jurisdiction over Wallingford violates the Due Process Clause of the Fourteenth Amendment.

## CONCLUSION

The Plaintiffs have failed to prove that personal jurisdiction exists over Wallingford because the Plaintiffs have failed to establish that Wallingford committed one of the acts enumerated in Missouri's long-arm statute. Invoking the "tortious act" provision of the Missouri long-arm statute, the Plaintiffs failed to make a prima facie showing that Wallingford committed the tort of negligent misrepresentation because the facts do not establish that the Pullen Defendants retained Wallingford with the specific intent of benefitting the Plaintiffs. Accordingly, Wallingford's Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED.

**IT IS SO ORDERED**.

/s/ Gary A. Fenner
GARY A. FENNER, JUDGE
 United States District Court

DATED:   September 19, 2005